PEOPLE v HANEY

Docket No. 124347. Submitted September 12, 1991, at Lansing. De-
cided December 16, 1991, at 9:00 A.M. Leave to appeal sought.

Marcus R. Haney pleaded guilty in the Genesee Circuit Court,
Dale A. Riker, J., of possession of less than twenty-five grams of
a mixture containing cocaine. The plea was conditioned on his
right to seek review of the dismissal of his motion to suppress
as evidence cocaine that had been seized during the search of
his automobile after a stop for failure to signal a turn. The
officer who stopped the defendant had observed him leaving a
house that was under police surveillance while a search war-
rant for the premises was being secured, and the defendant was
arrested when it was discovered that he had no driver's license
and that the license plate sticker on his automobile had ex-
pired. The defendant argued that the initial stop was a mere
pretext for further investigation and that, accordingly, the
subsequent arrest, search, and seizure were unlawful. The
defendant appealed.

The Court of Appeals *held:*

1. An arrest or stop may not be used as a pretext to search
for evidence of an unrelated crime. An arrest is reasonable
where the officer has probable cause to believe that the defen-
dant committed an offense for which a statute or local law
authorizes the officer to make a custodial arrest. Having seen
the traffic violation, the stop and the subsequent custodial
arrest for driving without a license were constitutionally
proper, and the search of the passenger compartment of the
automobile contemporaneous with the arrest was lawful.

2. The inclusion in the presentence report of the defendant's
expunged juvenile record does not require resentencing.

Affirmed.

FITZGERALD, P.J., dissenting, stated that the present case
represents a classic example of a stop for a minor traffic
violation that is made as a mere pretext to investigate a hunch

REFERENCES
Am Jur 2d, Searches and Seizures §§ 39, 43, 45, 90, 99.
Lawfulness of search of motor vehicle following arrest for traffic
violation. 10 ALR3d 314.

that the driver is engaged in illegal drug activity. The case relied upon by the majority is inapposite, because that case was concerned with the reasonableness of the arrest following a stop, rather than the validity of the initial stop. The search in this case was incident to a stop made as a mere pretext to search, the evidence seized in the search should have been suppressed, and the charges should have been dismissed.

Searches and Seizures — Arrest — Pretext — Probable Cause.

An arrest is reasonable, and thus not a mere pretext, for search and seizure purposes where the arresting officer has probable cause to believe that the defendant has committed or is committing an offense for which the officer is authorized under state or local law to make a custodial arrest; controlled substances discovered during the search of the passenger compartment of an automobile following the arrest of the defendant for driving without a license after having been stopped for a traffic infraction are admissible at the defendant's trial for possession of controlled substances.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

State Appellate Defender (by *Jennifer A. Pilette*), for the defendant on appeal.

Before: Fitzgerald, P.J., and MacKenzie and Weaver, JJ.

Weaver, J. Defendant entered a conditional plea of nolo contendere to one count of possession of less than twenty-five grams of cocaine, MCL 333.7403(2)(a)(v); MSA 14.15(7403)(2)(a)(v). This plea was conditioned on his right to appeal the trial court's denial of his motion to suppress evidence seized during a search of his car. Defendant was sentenced to a prison term of two to four years. He now appeals as of right, and we affirm.

While an undercover narcotics officer was observing a house, waiting for a search warrant for

that house to arrive, he saw defendant enter the house and leave after approximately ten minutes. The officer called for backup to assist him in stopping defendant's car, because he was instructed to "secure all and any people leaving or coming" from the residence until the search warrant arrived. Defendant was ultimately stopped for failure to signal a left turn. It was discovered that defendant did not have a driver's license and that the license sticker on the car was expired. Defendant was then placed under arrest and seated in the police car. After moving it to a nearby parking lot, the police searched defendant's car. A small plastic bag containing cocaine was found underneath the driver's seat.

The officer testified that defendant was stopped *both* because he had instructions to stop all vehicles and people leaving that house and because defendant failed to signal a left turn.

I

Defendant first argues that the evidence should be suppressed because the stop for a traffic violation was a pretext to search for evidence of another offense.

An arrest or stop may not be used as a "pretext" or "subterfuge" to search for evidence of crime. *People v Gonzales,* 356 Mich 247, 257; 97 NW2d 16 (1959). When police lack the reasonable suspicion necessary to support a stop and use a minor violation to stop and search a person or place for evidence of an unrelated serious crime, the stop is a mere pretext. *United States v Rivera,* 867 F2d 1261 (CA 10, 1989).

The traditional response to this police tactic has been to suppress all evidence derived from a search made incident to a stop or arrest that was a

mere pretext. *United States v Trigg,* 878 F2d 1037, 1039 (CA 7, 1989).

Most circuits and commentators agree that it is an objective analysis of the facts and circumstances of a stop, and not an inquiry into the officer's subjective intent that is appropriate for determining whether the stop was a pretext. *United States v Guzman,* 864 F2d 1512, 1515 (CA 10, 1989). The courts do not agree, however, on what objective factors or elements are dispositive in determining whether an intrusion is a pretext and thus unconstitutional. *United States v Guzman, supra* at 1515. Our research has disclosed no Michigan cases addressing the question of what factors should be considered in determining whether a stop or arrest was a mere pretext.

Our review of the jurisprudence convinces us that the best view of which factors should be used is that expressed in *United States v Trigg, supra.* This case holds that the reasonableness of an arrest depends on the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense? Second, was the arresting officer authorized by state or municipal law to effect a custodial arrest for the particular offense? If these two factors are present, we believe that a stop or arrest is necessarily reasonable under the Fourth Amendment. In other words, as long as the police are doing no more than they are legally permitted and objectively authorized to do, a stop or arrest is constitutional.

In this case, both questions are answered in the affirmative. The police did have probable cause to believe defendant had committed an offense, because they saw him make a left turn without signaling. Further, there is no dispute that the officer was authorized by law to make the stop and

then the custodial arrest for the relevant offenses. Thus, we find the stop and the arrest were not mere pretexts and are constitutional.

## II

Defendant next asserts that the evidence should have been suppressed because it was incident to a search without a warrant that did not fall into a recognized exception. We disagree.

The police made a lawful custodial arrest of defendant, the occupant of the automobile. Therefore, the contemporaneous search of the passenger compartment of the car was constitutional. *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981).

## III

Finally, defendant complains that his presentence report contained reference to his mandatorily expunged juvenile record and asserts that he is entitled to resentencing.

At the sentencing hearing, defendant and his attorney conceded that the presentence report containing juvenile convictions was accurate. Our Supreme Court has recently held that, when sentencing an adult offender, a court may consider the offender's juvenile record even though it has been expunged. *People v Smith,* 437 Mich 293; 470 NW2d 70 (1991).

We affirm.

MacKENZIE, J., concurred.

FITZGERALD, P.J. *(dissenting).* I respectfully dissent.

A stop is a mere pretext where the police use a

legal justification, such as a minor violation, to support the stop in order to search a person or place for evidence of an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. *United States v Rivera,* 867 F2d 1261, 1263 (CA 10, 1989); *United States v Guzman,* 864 F2d 1512, 1515 (CA 10, 1988); *People v Gonzales,* 356 Mich 247, 257; 97 NW2d 16 (1959). The classic example, presented in this case, occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity. In fact, the district judge conceded that "[i]t's close to a pretext stop [sic]," but "under the circumstances and in view of the fact that defendant did not have a license, it's a good stop."

I agree that an objective analysis of the facts and circumstances is appropriate for determining whether a stop was a pretext. *Guzman, supra* at 1519. However, I believe that in determining whether a traffic stop is an unreasonable pretext, the proper inquiry is that expressed in *United States v Smith,* 799 F2d 704 (CA 11, 1986), and adopted in *Guzman, supra* at 1517:

> [T]he Eleventh Circuit has established the better test for determining whether an investigatory stop is unconstitutional: a court should ask "not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." *Smith,* 799 F2d at 709.
>
> "That an officer theoretically *could* validly have stopped the car for a possible traffic infraction [i]s not determinative. Similarly immaterial [i]s the actual subjective intent of the deputy. [A] stop [i]s unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been

uninterested in pursuing the lesser offense absent that hope." *Id.,* at 710.

I disagree with the majority's adoption of the test set forth in *United States v Trigg,* 878 F2d 1037 (CA 7, 1989), because that case was concerned with determining the reasonableness of an *arrest,* not a stop. In *Trigg,* the police were aware that Trigg was driving on a suspended license before they stopped his vehicle. The validity of the initial stop was not at issue. There is no dispute that an arrest may be made once the officer is presented with evidence that the defendant is driving without an operator's license.

To accept the majority's opinion is to condone an officer's practice of routinely following a vehicle that he wishes to search until he observes a minor traffic violation. Such arbitrary action is unreasonable within the meaning of the Fourth Amendment. Unless officers routinely stop minor traffic violators, such as those who fail to signal a turn, absent some other reason to stop the car, the objective facts suggest that the stop would not have been made but for a suspicion that could not constitutionally justify the stop.

In this case, the officers made a controlled buy at a residence and went to procure a search warrant for the home. Surveillance was conducted on the home during this time, and an undercover officer was instructed to secure all people leaving or coming from the residence until the search warrant arrived. Defendant entered the house and left after approximately ten minutes.

The officer then "called for a marked unit to come and assist me in a stop with that car because we were to secure all and any people leaving or coming." After radioing for the unit, the car "was stopped for failure to signal a left turn." During

questioning at the preliminary examination, the officer testified:

> *Q.* And you were under instructions to observe anybody who came and went at that particular address?
>
> *A.* I was under instructions to stop and secure anyone leaving that address.
>
> *Q.* Okay. So you—what you're saying is you were under—already under instructions to stop anybody . . .
>
> *A.* Yes, because a search warrant was being secured for that.
>
> *Q.* Who gave you that particular order or instruction?
>
> *A.* I believe it was Detective Sergeant Abraham, my supervisor.
>
> *Q.* So, you [sic] main reason for stopping anybody was the instruction that you received from Detective Abraham, is that correct?
>
> *A.* Yes.
>
> *Q.* Okay. And, in fact, you stopped this particular vehicle pursuant to that instruction, did you not?
>
> *A.* Yes, sir, I did.

Although the officer later testified that he stopped defendant's car both because he was told to and because of the traffic violation, no testimony was presented to support a finding that the officer would have stopped the car for failure to signal in the absence of the order to search all cars leaving the residence for evidence of drug dealings. Under these circumstances, I believe that the stopping of defendant's vehicle by the police was a pretext. The stop is not justified by the subsequent discovery that defendant did not have an operator's license. See, e.g., *People v Holloway,* 416 Mich 288, 306; 330 NW2d 405 (1982) (Levin,

J., dissenting) (the discovery of contraband does not legitimize a search). The evidence derived from the search incident to that stop should have been suppressed, and, therefore, the charges against defendant should have been dismissed.