# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDISON ALEXANDER PEOPLES,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 331639
Alger Circuit Court
LC No. 2013-002073-FC

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Defendant appeals by right from his convictions following a bench trial of possession of a weapon by a prisoner, MCL 800.283(4), and assault with a dangerous weapon (felonious assault), MCL 750.82. The trial court imposed sentences of two years and four months to five years' imprisonment for the prisoner-in-possession conviction, and two years and four months to four years' imprisonment for the felonious assault conviction. We affirm.

## I. BASIC FACTS

Defendant was incarcerated at the Alger Correctional Facility at the time he assaulted another prison inmate with an improvised knife on a morning in August 2016. Correctional Officer Marc Maxon testified that, at the time in question, he was in a locked-control room from which he could look into the prison wings, when he observed the victim, who was on cell-cleanup duty and was talking to another inmate. Maxon stated that he also observed defendant exit the shower, throw his shower supplies on a bed, and then move quickly toward the victim with something in his hand. Defendant then forcefully and repeatedly stabbed the victim, whose back was initially turned to defendant, with the weapon. Maxon observed no interactions between defendant and the victim before the stabbing. Maxon called for assistance, and prison staff secured defendant and the victim. Maxon observed defendant toss his weapon away as other correctional officers responded to the melee. Other correctional officers also testified that they saw defendant stabbing the victim with the knife. The victim sustained several stab wounds and was taken for medical treatment. A correction officer retrieved the weapon and secured it.

-1-

## II. ANALYSIS

## A. RIGHT TO SELF-REPRESENTATION

On appeal, defendant first argues that the trial court abused its discretion by denying his request for self-representation. This court reviews a trial court's decision on a defendant's request for self-representation for an abuse of discretion. *People v Hicks*, 259 Mich App 518, 521; 675 NW2d 599 (2003).

"The right to self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Dunigan*, 299 Mich App at 587. "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as a guarantor of a fair trial, is the standard, not the exception, in the absence of a proper waiver." *People v Russell*, 471 Mich 182, 189-190; 684 NW2d 745 (2004) (internal quotation marks and citation omitted). Upon a defendant's request to proceed pro se, the trial court must determine whether the request is unequivocal, whether the defendant is knowingly, intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, and otherwise burden the court and the administration of justice. *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).

In this case, before trial, defendant repeatedly asserted what he called a jurisdictional challenge to the prisoner-in-possession charge, asserting that he was not represented by counsel during the verdict phase of the trial that resulted in his incarceration,[1] and arguing that this irregularity not only invalidated the result of his trial, but also invalidated the Department of Correction's exercise of jurisdiction over him.[2]

---

[1] The record from those earlier proceedings indicates that, after the jury retired to deliberate, defendant's defense attorney informed the court that he was not going to be in the area when the verdict was expected, but that he would arrange for "a brother attorney to stand in" for him, and added that defendant was aware of this and had no objections. The transcript of the proceeding in which the jury delivered its verdict in fact lists defendant's trial attorney as participating as usual, but the attorneys did not enter their appearance on the record, and only the court, the jurors, the bailiff, and the prosecuting attorney were on the record. During a pretrial hearing in this case, defendant's earlier trial attorney testified that, although he could not recall representing defendant in that case, he had never missed taking a verdict in a criminal case in his 41 years of practice. He further explained that although he may have had a scheduling conflict for a time, his "guess" was that it resolved itself and thus that he attended the verdict proceeding after all.

[2] Defendant was initially convicted of, and sentenced to imprisonment for, assault with intent to rob while armed (second-habitual offender), assault with intent to commit great bodily harm less than murder (second-habitual offender), two counts of felony-firearm, felonious assault, third-

During a pretrial hearing, as defense counsel was advancing defendant's challenge to the incarceration underlying his prisoner-in-possession charge, defendant asked the court if it would mind if he spoke, and the court answered that it would indeed mind. Defense counsel then continued with his argument before defendant interjected again:

> *Defendant.* Your Honor, for the purposes of this hearing, I'd like to represent myself.
>
> *The court.* Sit down . . . .
>
> *Defendant.* Are you denying my motion?
>
> *The court.* I am.
>
> Let's continue here . . . .
>
> . . . [I]f you have. . . of any nature, you need to reduce them to writing and provide them to your attorney prior to the hearing, okay? He's competent; I've watched him work, he knows what he's doing. If you have matters that you want to bring to his attention, reduce them to writing and get 'em to him. He will meet . . . with you, when it's convenient for both of you, so that you can prepare your case. But I don't want to continue with the interference. If you have questions, get 'em to him, all right? If you need more time when you're here, to meet with him, we'll provide it okay? Let's move on.

As defense counsel was winding down his argument, defendant interjected that he would "like to redo my motion" and to "represent myself" in the matter. The following discussion then took place:

> *The court.* If you want to make that motion, reduce it to writing; we'll take it up at the next hearing, okay? But we're here on this point. This is the

---

degree fleeing, carrying a dangerous weapon with unlawful intent, and carrying a concealed weapon. This Court affirmed defendant's convictions but remanded the case to the trial court for recalculation of the sentencing credit. *People v Peoples*, unpublished opinion per curiam of the Court of Appeals issued April 3, 2007 (Docket No. 265481). The Supreme Court in turn denied defendant's application for leave to appeal. *People v Peoples*, 480 Mich 858; 737 NW2d 712 (2007). In the years since that earlier case, the trial court amended the judgment of sentence twice in each of 2005, 2006, 2007, and 2013. The court also twice rejected defendant's challenges to amendments entered without resentencing to reflect the consecutive nature of his felony-firearm sentences.

Defendant also filed a delayed application for leave to appeal arguing that his due process rights to notice and hearing were violated when his judgment of sentence was amended without resentencing. This Court denied the application "for lack of merit in the grounds presented." *People v Peoples*, unpublished order of the Court of Appeals, entered June 5, 2014 (Docket No. 319561). The Supreme Court denied defendant's application for leave to appeal. *People v Peoples*, 497 Mich 981; 861 NW2d 23 (2015).

second bite of the apple. Your attorney understands what he's doing. I understand what the motions are; I understand what the arguments are. [The prosecuting attorney] understands what they are. All right? Quit interrupting, all right?

*Defendant*. I'm speaking to my attorney telling him, 'cause he doesn't—it is—it's rather elaborate, the issues, and . . . it's so convoluted and meshed in which some of the issues affects the other, that he has difficulty—I've studied this for years, and I have understanding. I'm reading this enough—

*The court*. Very good.

*Defendant*. —keeping track of it for years—

*The court*. I've understood—

*Defendant*. —so—

*The court*. —his arguments. I'm not confused.

*Defendant*. Okay.

*The court*. I don't think [the prosecuting attorney is] confused. We understand the issues. All right?

The court denied defendant's motion, noting, among other things, that it could not "perceive" a situation where a court would move forward during the taking of the verdict without defense counsel being present.

Defendant's request to represent himself was thus not unequivocal, but was limited to the motion hearing before the court. The record clearly shows that the request related to only the motion then before the court, as underscored by defendant's explanation that the issues presented in the motion were "elaborate, convoluted, and meshed," and that he had studied the matter for years and had a good understanding of the issues. Defendant also explained that he wanted to address the court personally because he had been telling his attorney what to say to the court, inducing the court to assure defendant that it understood defense counsel's position, and required no elaboration or clarification.

Instructive here is *People v Arthur*, 481 Mich 882; 748 NW2d 879 (2008) (peremptorily reversing in part and remanding, while otherwise denying leave), where the Supreme Court reversed this Court's disposition of the issue of self-representation and adopted the reasoning in the dissenting opinion. In *Arthur,* during a pretrial hearing, the defendant informed the court that, "Throughout the rest of these proceedings, I just would like to address the Court, let the Court know that I will be representing myself. [Defendant's appointed attorney] will no longer be representing me throughout the rest of these proceedings." *People v Arthur*, unpublished opinion per curiam of the Court of Appeals, issued January 29, 2008 (Docket No. 273577), p 2. The trial court denied defendant's request, reminded him that he was represented by counsel, and

advised him that he could file a motion in the matter. *Id.* at 2. Throughout the hearing, the defendant continued to insist that he wanted to represent himself and even protested to the court that "[y]ou cannot deny my constitutional rights, Your Honor." Unpub op at 2-3. This Court's majority held that the defendant's request was not unequivocal because he made the request during two hearings on a motion to adjourn, failed to file a motion for self-representation before the trial court, and requested his counsel to withdraw while repeatedly asking for a different counsel. Unpub op at 1. The dissent disagreed, opining that the defendant's request was unequivocal in light of his "twice-repeated request to represent himself, coupled with a specific reference to the constitutional nature of his right." Dissent at 2 (GLEICHER, J.). The dissent elaborated that defendant's "election to self-representation was unqualified and forthright" as "his words evinced neither equivocation nor hesitation." *Id.* at 1.

This case is distinguishable from *Arthur*, in that defendant's request was limited to the motion then before the court, and apparently based on his assumption that defense counsel did not fully understand his theory for challenging the prisoner-in-possession charge. See, e.g., *People v Payne*, 27 Mich App 133, 134-136; 183 NW2d 371 (1979) (no denial of the right of self-representation where the defendant's request to discharge his appointed counsel included no unequivocal request to represent himself). Moreover, defendant did not indicate that he was dissatisfied with his counsel's performance, see *Anderson*, 398 Mich at 370-371, or that he wished to waive his right to counsel, but instead was merely attempting to add his personal insights to defense counsel's presentation. Because defendant's request was not unequivocal, the trial court was not required to inquire further into the matter. See *id.* at 368 ("once the defendant has unequivocally declared his desire to proceed *pro se* the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily").

Defendant objects to the trial court's having directed him to file a motion in connection with his request to represent himself and correctly points out that motions for self-representation may be made orally. See MCR 2.119(A)(1). The trial court properly denied defendant's oral motion and did not abuse its discretion by offering defendant the opportunity to file a second, written motion.

Because defendant did not express an unequivocal desire to represent himself, the trial court did not err in declining to allow defendant any degree of self-representation in the proceedings below. See *Anderson*, 398 Mich at 367-368.

## B. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to support his convictions. This Court generally reviews challenges to the sufficiency of evidence to support a criminal conviction de novo. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). However, a trial court's findings of fact in a bench trial are reviewed for clear error. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* Questions of law are reviewed de novo. *Id.*

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). "Due process requires that, to sustain a conviction, the evidence must show guilt beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). A "prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Instead, the prosecution is bound to prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. *Id.*

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). In this case, Officer Maxon testified that he observed defendant repeatedly stab the victim with the improvised knife. Other correctional officers responding to the scene described defendant as the "clear aggressor." The victim sustained five superficial puncture marks from which he was bleeding.

Defendant argues that the prosecution failed to prove beyond a reasonable doubt that what occurred between himself and the victim was not a mutual contest, on the grounds that none of the witnesses saw the beginning of the fight or was in a position to hear any exchange that might have occurred between defendant and the victim. This argument is not persuasive. Officer Maxon witnessed the beginning of the fight from his secure location, and, although he could not overhear the prisoners' conversations from the wings, he testified that the victim's back was turned to defendant at the time of the stabbing. There was no evidence of any verbal exchange between the victim and defendant before the incident. Indeed, the testimony presented negated any inference that what occurred involved any real mutuality of aggression. The officers' descriptions of defendant as the "clear aggressor," as well as their indications that the victim was acting only defensively, were consistent. Officer Maxon testified that, upon being stabbed, the victim quickly turned around and began swinging his hands and moving around the wing, and another correctional officer described the victim as "backing up and trying to defend himself" during the stabbing. The prison counselor also testified that the victim was not fighting back but was trying simply to avoid getting stabbed. We conclude that this evidence, viewed in the light most favorable to the prosecution, was sufficient to allow a rational trier of fact to find the elements of felonious assault proved beyond a reasonable doubt.

Next, defendant argues that there was insufficient evidence presented at trial to show that he was lawfully incarcerated for the purposes of the prisoner-in-possession charge. Again, defendant challenges the lawfulness of his incarceration by attacking the underlying convictions on the ground that no attorney was present on his behalf when the jury delivered the verdict underlying those convictions. We need not explore the factual bases for defendant's theory of deprivation of counsel, however, because no such collateral attack on trial proceedings is a defense to a charge of possession of a weapon by a prisoner.

The prisoner-in-possession statute provides as follows:

> Unless authorized by the chief administrator of the correctional facility, a prisoner shall not have in his or her possession or under his or her control a weapon or other implement which may be used to injure a prisoner or other person, or to assist a prisoner to escape from imprisonment. [MCL 800.283(4).]

-6-

The statute does not contain any requirement concerning the lawfulness of the incarceration. Rather, the statute's applicability is dependent upon a person's status as a prisoner. Statutory language should be construed according to the common and approved meaning of the words. *People v Ball*, 297 Mich App 121, 123; 823 NW2d 150 (2012). The term "prisoner" is expressly defined in MCL 800.281a(g) as "a person committed to the jurisdiction of the department who has not been released on parole or discharged." Here, there is no dispute that at the time of the commission of the offense, defendant was committed to the Alger Correctional Facility, and had not been released on parole or discharged. He was therefore subject to prosecution for being a prisoner in possession of a weapon, notwithstanding any real or imagined legal defects attendant to that incarceration. See *People v Ovalle*, 222 Mich App 463, 467; 564 NW2d 147 (1997) (for purposes of possession of a controlled substance by a prisoner, "The legality of [a] person's commitment is immaterial, apart from determining whether the person had been released on parole or discharged.").[3]

Further, even if the prosecution were obliged to prove the lawfulness of the incarceration in connection with a charge of prisoner-in-possession, such proof may take the form of evidence that the defendant was, in fact, incarcerated in a state prison, a fact not here in dispute. See *People v Neal*, 233 Mich App 649; 592 NW2d 95 (1999) (construing MCL 750.197c, which concerns assaults of custodial personnel or escape attempts by "lawfully imprisoned" persons).[4]

## C. ASSISTANCE OF COUNSEL

Defendant also claims that trial counsel was ineffective. A defendant's claim to ineffective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d (2002). However, because "defendant did not move in the trial court for a new trial or an evidentiary hearing" in connection with this issue, our review "is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A criminal defendant has the fundamental right to effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To establish ineffective assistance of counsel, the defendant must first show: (1) that counsel's performance fell below the objective standard of reasonableness under the prevailing professional norms, and (2) that there is a reasonable probability that, but for the counsel's error, the result of the proceeding would have been different. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). In order to meet the second requirement, a defendant must show that counsel's error was so serious that the defendant was deprived of a fair trial. *LeBlanc*, 465 Mich at 578. "[A]

---

[3] It is immaterial that the parties agreed that proving lawful incarceration was an element of the prisoner-in-possession charge. Parties may stipulate to matters of fact, but a court is not bound by any such stipulations on questions of law. See *Staff v Johnson*, 242 Mich App 521, 535; 619 NW2d 57 (2000).

[4] *Neal* resolved a conflict with, and overruled in pertinent part, *People v Gaines*, 223 Mich App 230; 566 NW2d 35 (1997), rendering defendant's reliance on the latter case inapt.

defendant must also establish a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (internal quotation marks and citation omitted).

Defendant first argues that counsel was ineffective for not having raised a Confrontation Clause objection to the prosecution's failure to produce the victim as a witness. The Sixth Amendment of the United States Constitution, and Article I, § 20 of Michigan Constitution, guarantee an accused the right "to be confronted with the witnesses against him." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). "[T]he purpose of the Confrontation Clause is to provide for a face-to-face confrontation between a defendant and his accusers at trial. This confrontation is an important right of the defendant because it enables the trier of fact to judge the witnesses' demeanors . . . ." *People v Dye*, 431 Mich 58, 64; 427 NW2d 501 (1988).

In this case, however, the victim never took on the role of witness, because he did not "bear testimony" against defendant at any time before or during trial. See *People v Henry (After Remand)*, 305 Mich App 127, 153; 854 NW2d 114 (2014). The testimony included no account from the correctional officers, the treating physician, or any other witness of any testimonial statement the victim offered out of court. Nor did the victim testify at the preliminary examination. The victim of a crime need not testify in order for the crime to be prosecuted. See *People v Morrow*, 214 Mich App 158, 163-164; 542 NW2d 324 (1995). Additionally, there is nothing on record indicating that the prosecution endorsed the victim as a witness under MCL 767.40(a); therefore, it was not obligated to produce him at trial. See *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 7 (2004).

Moreover, defendant had the right and opportunity to call the victim as a witness, but he chose not to do so. Defendant did not explain why he was unable to call the victim on his own, and "the right to confrontation is not violated by the prosecution failing to call witnesses that defendant could have called to testify." *People v Cooper*, 236 Mich App 643, 659; 601 NW2d 409 (1999). Consequently, any Confrontation Clause objection requiring the prosecution to produce the victim as a witness would have been futile, and counsel is not ineffective for declining to raise a futile objection. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Next, defendant contends that counsel was ineffective for failing to show for two scheduled meetings with him. Although defense counsel requested an adjournment on the grounds that he failed to attend two scheduled meetings with defendant the week before trial, the record shows that counsel was prepared to proceed with trial. Indeed, defense counsel displayed an astute knowledge of the evidence, and fully cross-examined the prosecution's witnesses. See *People v Payne*, 285 Mich App 181, 189; 774 NW2d 714 (2009). Moreover, defendant does not suggest how the outcome of trial might have been different had the two meetings taken place as scheduled.

Further, defendant's assertion during sentencing that there had been no trial preparation because he did not have contact with defense counsel for eight or ten months before trial is not supported by the record. Before the December 14, 2015 bench trial, defendant, and his attorney appeared for trial on May 26, 2015, which was postponed to enable defendant to pursue an interlocutory appeal with this Court on whether lawful incarceration is an element of prisoner-in-

possession. Thereafter, all proceedings were stalled until the parties, including defendant's appellate advocate, informed the trial court on August 19, 2015 that they agreed that proof of lawful incarceration was an element of the prisoner-in-possession charge.[5] Defendant has thus failed to establish a factual basis for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). For these reasons, defendant has failed to show that defense counsel's performance was deficient, or that there is a reasonable probability that the outcome of the trial would have been different absent defense counsel's alleged errors. See *People v Sabin (On Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Defendant also contends that counsel was ineffective for not having filed a supplemental brief on the issue of unlawful incarceration. During defense counsel's closing argument, he asked for an opportunity to "potentially brief" the supposed lawful-incarceration element of the prisoner-in-possession charge. The court gave counsel ten days to do so, but the record reveals no such continuing campaign. As previously discussed, proof that the defendant was lawfully incarcerated is not in fact required under the prisoner-in-possession statute, MCL 800.283(4); rather, the prosecution need only prove that at the time of the offense, the defendant was a "prisoner," meaning "a person committed to the jurisdiction of the department who has not been released on parole or discharged," MCL 800.281a(g). Therefore, even if counsel had filed a brief on the issue, any such advocacy would have been futile, and counsel is not ineffective for declining to advocate a meritless position. See *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012).

## D. SUFFICIENCY OF FACTUAL FINDINGS AND LEGAL CONCLUSIONS

Defendant also argues that the trial court failed to state on the record sufficient findings of fact and conclusions of law following the bench trial. We disagree.

MCR 6.403 provides that, in a bench trial, "The court must find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made part of the record." See also, *People v Shields*, 200 Mich App 554, 558; 504 NW2d 711, (1993). "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularized facts." MCR 2.517(A)(2). The court is not required to make specific findings of fact regarding each element of the crime charged, *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992), but its findings should show how the court resolved credibility issues and other conflicts in the evidence, *People v Ramsey*, 89 Mich App 468, 477; 280 NW2d 565 (1979). "Factual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *Legg*, 197 Mich App at 134. "A court's failure to find the facts does not require remand where it is manifest that the court was aware of the factual issue, that it resolved the issue, and that further explication would not facilitate appellate review." *Id.* at 134-135.

---

[5] See note 3, *ante*.

In this case, the trial court summarized its findings and conclusions as follows:

[D]efense counsel would have the Court believe that a picture is not worth a thousand words, in this particular matter, but to the contrary. The video is quite revealing in terms of the activity on the day in question, such that the Court is satisfied, beyond a reasonable doubt, that not only did the Defendant in this matter possess the weapon, that's been admitted as exhibit four, in the act of assaulting the victim in this matter, [the victim], but that that act, in itself, carried forward into the felonious assault with the use of the weapon that has been recovered and testified by more than one individual, but one individual in particular that was the eyewitness to the event, that saw the weapon in possession of the Defendant, noticed it being discarded and the same being found within close proximity to the Defendant. So the Court is satisfied that on the charges, the People have proved, beyond a reasonable doubt, that he is guilty of both the prisoner in possession of a weapon and felonious assault.

Although the trial court was concise, it "established that it was aware of the relevant issues in the case and correctly applied the law . . . ." *People v Smith*, 211 Mich App 233, 235; 535 NW2d 248 (1995). Defendant's contention that the trial court failed to review the applicable statute, jury instructions, elements of the offenses, or burden of proof is without merit because "judges are presumed to know the applicable law." *Lanzo Constr Co*, 272 Mich App at 484. See also, *People v Cazal*, 412 Mich 680, 691 n 5; 316 NW2d 705 (1982) ("[A] trial judge, sitting as a trier of fact, is not required to sequester himself until a final decision is announced. Neither is voir dire required in the absence of a jury. A trial judge, sitting as a factfinder, is not subject to any peremptory challenges. Instructions on the law to be applied are not required to be given in open court.").

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher